**CABLE–LA, INC., Plaintiff,**

v.

**WILLIAMS COMMUNICATIONS, INC., fka VYVX, Inc., Defendant,**

and

**Williams Communications, Inc., fka VYVX, Inc., Counter–Claimant,**

v.

**Cable–La, Inc., and Nobel Insurance Company, Counter–Defendants,**

and

**Cable–La, Inc., Third–Party Plaintiff,**

v.

**Whiting Construction Co., Inc., and Great American Insurance Company, Third–Party Defendants,**

and

**Whiting Construction Co., Inc., Counter–Claimant,**

v.

**Cable–La, Inc., and Nobel Insurance Company, Counter–Defendants.**

No. 1:98CV00266.

United States District Court, M.D. North Carolina.

March 23, 1999.

David A. Senter, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Daniel W. Fouts, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Cable–La, Inc.

Hada V. Haulsee, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Williams Communications, Inc., fka VYVX, Inc.

Thomas Lynn Ogburn, III, Poyner & Spruill, L.L.P., Charlotte, NC, for Whiting

Construction Co., Inc., Great American Insurance Company.

David A. Senter, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Daniel W. Fouts, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, Brian G. Corgan, Kilpatrick & Stockton, Atlanta, GA, for Nobel Insurance Company.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

This matter is before the court on a motion filed by Defendant Williams Communications, Inc., to transfer Plaintiff Cable–La, Inc.'s suit against it to the Northern District of Oklahoma, based on the presence of a forum-selection clause in the contract giving rise to their dispute. Plaintiff opposes Defendant's motion. Third-party defendants Whiting Construction Co., Inc., and Great American Insurance Company argue that the court should sever the third-party complaint and transfer it to the Western District of North Carolina, where a prior action between Third–Party Defendants and Plaintiff is pending. Plaintiff also has filed a motion to strike portions of the answers received to its third-party complaint. For the reasons set forth below, the court will grant Third–Party Defendants' motion to sever and transfer, grant Defendant's motion to transfer, and deny Plaintiff's motion to strike.

### FACTS

This matter arises out of a contract between Plaintiff Cable–La, Inc. ("Cable–La") and Williams Communications, Inc. ("Williams"). Cable–La is a South Carolina construction company with its principal place of business in Aiken, South Carolina. Williams is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and it owns a large system of fiber optic cable lines which course from Washington, D.C., to Houston, Texas. Cable–La and Williams entered into a contract on October 3, 1997, pursuant to which Cable–La agreed to perform certain construction services upon a portion of Williams' cable system extending through Davidson, Davie, Rowan, and Iredell Counties in North Carolina (thus spanning the boundary between the Western and Middle Districts of North Carolina).

Cable–La entered into the contract following a competitive bidding process. During bid selection, representatives of Cable–La traveled to Tulsa, Oklahoma, to attend a pre-bid meeting at Williams' home office. In addition, Cable–La representatives communicated both by mail and telephone with Williams' representatives in Tulsa while preparing and submitting their bid. Williams ultimately awarded the contract to Cable–La, and on October 3, 1997, John Tourcotte of Williams executed Contract No. 97P0223.04 at Williams' offices in Tulsa. Although the contract is dated October 3, 1997, according to Cable–La it did not execute the contract until October 17, 1997, when Larry Coker signed the contract at Cable–La's offices in Aiken, South Carolina. Williams has submitted a copy of the October 3, 1997, contract indicating Coker signed on September 24, 1997. The contract provides that Oklahoma law governs all contractual disputes and that any lawsuit to enforce the contract shall be brought in Tulsa County, Oklahoma, or in the United States District Court for the Northern District of Oklahoma.

Work on the fiber optic cable lines began after Cable–La executed a subcontract with Whiting Construction Co., Inc., ("Whiting") on October 23, 1997. In this subcontract, Whiting obligated itself to provide Cable–La with labor and materials needed by Cable–La to provide for Williams boring, piping, and fiber optic cable installation in Iredell and Rowan Counties. According to Whiting, the subcontract contains no forum-selection clause. Cable–La has not argued otherwise.

Williams contends that a number of safety violations occurred during the course of Cable–La's performance under

the contract; Cable–La ascribes blame for these violations, if they in fact occurred, on Whiting. On November 25, 1997, a fatality occurred which Williams contends stemmed from Cable–La's disregard for the safety regulations contained in the parties' contract. Williams maintains that after this accident it warned Cable–La of the consequences of failure to observe applicable safety regulations, but that Cable–La nevertheless permitted two subsequent violations to occur. By letter dated December 5, 1997, Williams purported to terminate its contract with Cable–La based on these and other alleged defects in Cable–La's performance. It has withheld payment to Cable–La. On December 22, 1997, Cable–La purported to terminate its subcontract with Whiting and has refused to pay Whiting any amount under the subcontract.

This series of events has spawned two separate lawsuits. Cable–La filed suit in the Middle District of North Carolina on March 31, 1998, against Williams, seeking damages for an alleged wrongful termination of the parties' contract and lien foreclosures against certain property owned by Williams in the Middle District. After Williams answered Cable–La's complaint and asserted counterclaims against Cable–La and its bonding company, Nobel Insurance Company ("Nobel"), for damages arising out of the alleged defects in Cable–La's performance, Cable–La filed a third-party complaint against Whiting and its bonding company, Great American Insurance Company ("GAI"). Cable–La alleges in its third-party complaint that Cable–La is entitled to recover from Whiting any amount owed by Cable–La to Williams on the latter's counterclaims. Whiting thus became a party to the Middle District action on August 13, 1998. It has since counterclaimed against Cable–La and Nobel for payment of amounts owed for Whiting's performance under the subcontract.

Prior to Whiting's first appearance in the Middle District, however, a lawsuit had already begun in the Western District of North Carolina involving the same parties to the Middle District third-party complaint and counterclaim. Whiting filed suit on July 18, 1998, in North Carolina state court in Iredell County against Cable–La, seeking sums allegedly owed by–Cable–La under the subcontract, and Cable–La subsequently removed the case to the Western District on July 20, 1998. Whiting represents to the court that in the Western District matter Cable–La has asserted a counterclaim against Whiting which in large part tracks its third-party complaint here. A motion filed by Cable–La to transfer the Western District matter to the Middle District is pending.

In the action here, Williams has sought to enforce the Oklahoma forum-selection clause contained in its contract with Cable–La by moving to transfer this matter to the Northern District of Oklahoma under 28 U.S.C. § 1404(a). Cable–La counters that the forum-selection clause is invalid under North Carolina law and that the balance of factors to be weighed under Section 1404(a) favors suit in the Middle District so strongly that the court should not give effect to the clause. Whiting and GAI argue that they cannot be forced to litigate in Oklahoma, because they did not agree to Oklahoma as a forum for their disputes with Cable–La. They argue that if the court is inclined to enforce the forum-selection clause contained in the Cable–La–Williams contract it should sever Cable–La's third-party complaint and transfer it to the Western District for consolidation with the pending Whiting–Cable–La suit. Williams does not object to Whiting's proposal. Cable–La has moved to strike those portions of Whiting's and GAI's answers that argue for dismissal, stay, or transfer of the third-party complaint, for failure to submit an accompanying brief.

## DISCUSSION

### A. *Williams' Motion to Transfer*

A defendant's motion to transfer a case

out of a district where venue is proper[1] is governed by 28 U.S.C. § 1404(a), which provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Williams argues that transfer is warranted because Cable–La has not sufficiently demonstrated that enforcing the parties' forum-selection clause would be unreasonable. The court agrees.

■ The first step in addressing a motion to transfer under Section 1404(a) is a determination of whether the proposed transferee court is one in which the action originally "might have been brought." *See Knight Med., Inc. v. Nihon Kohden Am., Inc.*, 765 F.Supp. 291, 292 (M.D.N.C.1991). This requirement is met if the transferee court "has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of transferee court." *Miot v. Kechijian*, 830 F.Supp. 1460, 1465 (S.D.Fla.1993); *see also* 17 James Wm. Moore *et al., Moore's Federal Practice* ("*Moore's*") § 111.12[1][a] (3d ed.1997). Williams' principal place of business is located in Tulsa, Oklahoma. For this reason, and Cable–La does not argue otherwise, Williams would be subject to process in the Northern District of Oklahoma if it were a separate state. Moreover, this fact indicates that venue is proper in the Northern District of Oklahoma as well. The federal venue statute, 28 U.S.C. § 1391(a), provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..., or (3)

a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The statute goes on to provide that for venue purposes a corporate defendant is deemed to reside in any judicial district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Because subject matter jurisdiction is based on diversity of citizenship, it is no less proper in the Northern District of Oklahoma than it is in the Middle District of North Carolina.

■ After finding the proposed transferee court to be an available destination, ordinarily the transferor court places the burden upon the party seeking transfer to show that under a multi-factor test the transferee court is the more convenient forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). The presence of a valid forum-selection clause alters the flexible analysis employed in a typical Section 1404(a) transfer case, however. *See id.* If valid, the clause causes the burden to shift from the party seeking transfer (and enforcement of the clause) to the party opposing enforcement of the clause. Once the burden shifts, in order to avoid transfer the plaintiff must demonstrate that enforcing the clause would be unreasonable and unjust. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("Where the forum-selection clause is valid ... the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."); *Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y.1992) ("[O]nce a mandatory choice of forum clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be relieved from his contractual duty.").[2]

---

**1.** No party contends that venue is improper in the Middle District.

**2.** Although unpublished dispositions are not binding authority in this circuit, the court notes that the Fourth Circuit has adopted a

The burden shift is triggered in the case at bar because Cable–La has not shown the forum-selection clause to be invalid or inapplicable. In the context of a motion to transfer under Section 1404(a), the Supreme Court has held that the validity of a forum-selection clause is determined with reference to federal law, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), and that such clauses are *prima facie* valid. *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Cable–La does not contend that the forum-selection clause's existence is the product of fraud or overreaching. Neither does Cable–La contend that the clause is permissive rather than mandatory.[3] As will be discussed below, Cable–La argues at length that two North Carolina statutory provisions allow it to avoid the effects of the forum-selection clause. Cable–La does not argue, however, that these provisions can be used substantively to invalidate the forum-selection clause. This follows from the rule set out in *Stewart* that federal rather than state law governs the validity of forum-selection clauses. *Stewart*, 487 U.S. at 32, 108 S.Ct. 2239.

■ Given that the parties' forum-selection clause is valid, this court must enforce it by transferring the matter unless Cable–La demonstrates that enforcement would be unreasonable and unjust. *Nizam's Inst.*, 1994 WL 319187 at *2. The fact that Cable–La can avoid the forum-selection clause at all flows from the *Stewart* opinion. In that case the Supreme Court rejected the notion that a forum-selection clause should be afforded dispositive weight in the context of Section 1404(a) analysis. *Stewart*, 487 U.S. at 31, 108 S.Ct. 2239. Instead, it directs lower courts, when engaging in the Section 1404(a) multi-factor test, to consider the presence of a valid forum-selection clause to be a "significant factor that figures centrally." *Id.* at 29, 108 S.Ct. 2239. If the party opposing transfer fails to present exceptional facts which show enforcement of the clause to be unreasonable, the presumption in favor of its enforceability will apply, and the court should transfer the matter. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.1996).

■ According to the Fourth Circuit, forum-selection clauses are unreasonable when

(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Allen*, 94 F.3d at 928 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and *The Bremen*, 407 U.S. at 12–13, 92 S.Ct. 1907). As stated above, Cable–La does not maintain that the provision in question was procured by fraud or overreaching, nor does it allege that Oklahoma law would deprive it of a remedy. Instead, Cable–La focuses first on the fourth

position consistent with that reflected in the cases cited. *See Nizam's Inst. of Med. Sciences v. Exchange Techs., Inc.*, No. 93–2196, 1994 WL 319187, at *2–3 (4th Cir.1994) (holding party opposing forum-selection clause must meet "heavy burden" by demonstrating clearly that enforcement would be unreasonable and unjust).

3. *Sterling Forest Assocs., Ltd. v. Barnett–Range Corp.*, 840 F.2d 249 (4th Cir.1988), continues to govern the distinction between mandatory and permissive forum-selection clauses in this

circuit, because the Supreme Court's subsequent overruling of the case was limited to a holding on an unrelated issue. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). The language contained in the forum-selection clause in the contract between Cable–La and Williams is unquestionably mandatory under *Sterling Forest*. 840 F.2d at 251–52 (holding clause reading "the parties agree that in any dispute jurisdiction and venue shall be in California" to be mandatory).

factor listed by the *Allen* court as indicative of unreasonableness.

■ Cable–La contends that Sections 22B–2 and 22B–3 of the North Carolina General Statutes reflect strong public policy interests of North Carolina. It argues that these interests authorize the court to deny enforcement of the forum-selection clause. Section 22B–2 provides that:

A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state.

N.C.Gen.Stat. § 22B–2. Cable–La asserts that its contract with Williams was for the improvement of real property in North Carolina, in that Cable–La became obligated under the contract to install fiber optic cable lines in this state. Section 22B–3 provides that "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." N.C.Gen.Stat. § 22B–3. Cable–La maintains that the Cable–La–Williams contract was entered into in North Carolina because a "meeting of the minds" occurred at a pre-construction meeting in North Carolina on October 14, 1997. In his affidavit, Larry Coker of Cable–La states that he did not sign the contract until after this meeting.

Even if the court were to assume that the provisions cited by Cable–La are relevant to the instant set of facts, it could not reach the result advocated by Cable–La. Cable–La suggests a rule that would eviscerate the clear holding of *Stewart.* A court cannot observe *Stewart's* pronouncement that state public policies disfavoring forum-selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause at issue *per se* unreasonable and thus unenforceable. The direction issuing from *Stewart* is that a court integrate such a policy into the multi-factor analysis put in place by Congress to govern Section 1404(a) transfer motions, just as it must integrate the presence of the clause itself into the analysis (as a "central" factor). *Stewart,* 487 U.S. at 33, 108 S.Ct. 2239 (Kennedy, J., concurring); *see also Shaw Group, Inc. v. Natkin & Co.,* 907 F.Supp. 201, 204 (M.D.La.1995) (rejecting claim that Louisiana statutory provision similar to N.C.Gen.Stat. § 22B–3 renders forum-selection clause unreasonable and unenforceable, in light of *Stewart* ). For this reason, the court will incorporate the public policy concerns of North Carolina, as well as those of Oklahoma, into the multi-factor analysis discussed below, but will not give such concerns dispositive weight.[4] *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1258 (4th Cir.1991) ("The *Stewart* Court rejected a focus on state law and directed courts faced with § 1404(a) mo-

---

**4.** The court notes that, while the installation of fiber optic cable lines is arguably an improvement to real property, it is not clear that Section 22B–3 applies. The contract is dated October 3, 1997, and was executed by representatives of Williams on that date. It provides that it becomes binding on Williams only upon Williams' execution of the agreement, and Williams has presented evidence that Cable–La executed the agreement on September 24, 1997. Thus it appears the contract was entered into in Oklahoma, rather than in North Carolina, because the last act

necessary to the formation of the agreement occurred in Tulsa. *See Gries v. Zimmer, Inc.,* 709 F.Supp. 1374, 1379–80 (W.D.N.C.1989) (citing *Fast v. Gulley,* 271 N.C. 208, 212, 155 S.E.2d 507 (1967)). If, as Cable–La argues, the contract was not effective until after the pre-construction meeting held in North Carolina on October 14, 1997, then the relevant last act occurred in South Carolina. Larry Coker states that he executed the contract following the pre-construction meeting at Cable–La's offices in Aiken on October 17, 1997.

tions for change of venue to conduct a proper analysis under that section.").

■ Cable–La also argues under the second factor listed in *Allen* that suit in Oklahoma would be so inconvenient as to warrant retention of the matter here, despite the forum-selection clause. The court does not agree. Williams prevails on its motion to transfer because Cable–La's evidence of inconvenience is not strong enough to "overcome the 'counterweight' of the parties' private expression of their venue preference." *Creditors Collection Bureau, Inc. v. Access Data, Inc.*, 820 F.Supp. 311, 313 (W.D.Ky.1993).

■ The factors bearing on inconvenience include:

(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses . . .; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F.Supp. 519, 527 (M.D.N.C.1996); *see also* 17 *Moore's* § 111.13[1][b]. Had the court weighed these factors in the absence of a forum-selection clause, it might well have retained this matter. As it is, however, Cable–La has failed to demonstrate that the factors weigh so heavily against transfer that the court should not hold Cable–La to the contract's clear language.

A number of factors do not point strongly either to Oklahoma or to North Carolina

as the more appropriate site for hearing the parties' dispute. The first factor does not weigh against transfer because the presence of a valid forum-selection clause eliminates the deference ordinarily afforded to the plaintiff's choice of forum. *See Jumara*, 55 F.3d at 880; *In re Ricoh*, 870 F.2d at 573. The fifth and eighth factors also do not weigh strongly in either direction. As Cable–La concedes, the fact that Williams has posted bonds against the liens asserted by Cable–La removes the problem of litigating Cable–La's *in rem* action outside North Carolina. Regarding court congestion, Whiting submitted statistical data to the court which indicates that the Middle District of North Carolina and the Northern District of Oklahoma have identical values for median time from filing to disposition and have nearly the same number of pending cases. Finally, the contract provides that Oklahoma law will apply to the parties' dispute, and North Carolina courts enforce such provisions. *Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655 (1980). Cable–La has not presented any facts which suggest that application of Oklahoma law will result in unfairness, so factor eleven is of no moment.

Several factors appear to weigh in favor of retaining the matter in the Middle District. Because all of Cable–La's and Whiting's performance occurred in North Carolina, factors two, three, four, and nine point to the Middle District as the more convenient forum. Several witnesses familiar with the November 25, 1997, accident and alleged safety violations by Cable–La and Whiting reside in or near the Middle District. If any viewing of the accident site or other work sites became necessary, obviously it would be more convenient if this matter were litigated in North Carolina. Finally, North Carolina's public policy interest in adjudicating local controversies and against enforcing forum-selection clauses which remove certain disputes from North Carolina favors retention of suits.

These factors should not be overstated, however. Oklahoma has an interest in adjudicating a dispute involving an Oklahoma resident. North Carolina lacks the same interest, because Cable–La is a South Carolina resident. Moreover, the contract provides that Oklahoma law will govern matters of contract interpretation and enforcement. Thus under factor ten Oklahoma is a more convenient forum because the courts there are naturally more familiar with the contours of Oklahoma law. The impact of factors two and three, relating to convenience of witnesses and location of other sources of proof, is dampened by virtue of the fact that this litigation may not involve contested factual issues surrounding the alleged accident and safety violations. The outcome of the Cable–La–Williams lawsuit hinges primarily on the legal effect of those facts under the parties' contract. Thus the most crucial witnesses and documents will be those bearing upon the appropriate interpretation of the safety and termination provisions contained in the contract. For these reasons factors two, three, four, and nine only weakly favor retention of suit.

Cable–La also argues that factors six and seven favor retention, because the Middle District is the only district where the entire dispute can be heard. Whiting's lawsuit under its subcontract against Cable–La is currently pending in the Western District of North Carolina and Cable–La has moved to have that matter transferred to the Middle District. While there may be some small duplicative effect of having Cable–La's claim against Williams heard in Oklahoma and Whiting's claim against Cable–La heard in North Carolina, the disputes involve two completely different contracts. While there may be evidence regarding the same accident and safety violations in both matters, the legal effect of that evidence on one contract may be unrelated to its effect on the other.[5] Furthermore, if the Whiting–Cable–La

suit were to be transferred here and consolidated with the Cable–La–Williams matter, Whiting would be deprived of its choice of forum. It filed suit in the Western District before being brought into the Cable–La–Williams matters here as a third-party defendant. Cable–La has presented no evidence that its contract with Whiting contains a clause specifying the Middle District as the parties' forum of choice. Because consolidation of both matters in the Middle District would deny Whiting its choice of forum and because the degree of overlap between the two severed cases will be relatively minor, factors six and seven weigh only weakly, if at all, in favor of retention of the suit here.

· With respect to the parties' interests in the transfer, the fact that the forum-selection clause will shift the expense of travel to Cable–La does not render it unenforceable. *See Creditors Collection Bureau,* 820 F.Supp. at 313 (citing *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1138–39 (6th Cir.1991)); *Weiss,* 801 F.Supp. at 1279. Moreover, Cable–La's representatives reside in South Carolina, so maintaining suit in North Carolina would still impose travel obligations upon them. Williams, on the other hand, has a significant interest in having this matter heard in Tulsa, and not simply because its principal place of business is located there. Because Williams contracts with construction companies across the southern United States in connection with work undertaken on its system of fiber optic cable lines, the forum-selection clause contained in its construction contract limits the potential fora in which it might have to answer to suit. *Cf. Carnival Cruise Lines,* 499 U.S. at 593–94, 111 S.Ct. 1522 (enforcing forum-selection clause contained on cruise ticket, where "cruise line has a special interest in limiting the fora in which it potentially could be subject to suit").

**5.** A potential inefficiency would be that if Williams prevails on its counterclaim against Cable–La in Oklahoma, Cable–La would be

forced to seek recovery from Whiting in the Western District on what was its third-party claim here in the Middle District.

■ Based on the facts before the court, the traditional convenience factors to be examined pursuant to Section 1404(a) at best point only weakly to the Middle District of North Carolina as the more convenient forum. In the face of a valid forum-selection clause, a plaintiff must come forward with a strong showing of inconvenience for a court to be justified in not transferring the matter pursuant to a forum-selection clause. *Nizam's Inst.*, 1994 WL 319187 at *2. The Fourth Circuit has described this "grave" level of inconvenience as that at which plaintiff is "for all practical purposes ... deprived of his day in court." *Allen*, 94 F.3d at 928. Because the facts presented do not reach this level, Cable–La has failed to persuade the court that it should not enforce the forum-selection clause to which Cable–La, a sophisticated business entity, agreed to be bound. *See In re Ricoh*, 870 F.2d at 573–74; 17 *Moore's* § 111.13[1][p][ii][A].

## B. *Whiting's Motion to Sever and to Transfer*

■ As was described above, a court may transfer a matter under Section 1404(a) only to a district in which the matter "might have been brought." 28 U.S.C. § 1404(a). Evidence presented by Whiting in opposing Williams' motion to transfer demonstrates that Cable–La's third-party complaint could not have been brought against Whiting in the Northern District of Oklahoma. Whiting is a North Carolina corporation with its principal place of business in Troutman, Iredell County, North Carolina (in the Western District). According to Whiting's president, Frank Whiting, Whiting has never transacted any business in Oklahoma or maintained any offices in Oklahoma. All of Whiting's performance under its subcontract with Cable–La took place in North Carolina, and the subcontract did not have a forum-selection clause specifying Oklahoma as the site for any disputes arising out of the subcontract. Finally, Whiting was not a party to the Cable–La–Williams contract, which contained the Oklahoma forum-selection clause. This evidence demonstrates that under the familiar "minimum contacts" analysis Whiting is not subject to personal jurisdiction in Oklahoma. *See generally Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941–46 (4th Cir.1994) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ Thus transferring Cable–La's third-party complaint to the Northern District of Oklahoma, and thereby forcing Whiting to defend itself in a forum which does not possess personal jurisdiction over it, would be inappropriate. 28 U.S.C. § 1404(a); *see also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315 (4th Cir.1984) (holding district lacking personal jurisdiction over defendant not one in which suit "might have been brought" under Section 1404(a)); 3 *Moore's* § 14.42[4] (discussing impact of venue transfer on third-party practice). Where there are multiple defendants, the fact that transfer of one defendant would be improper under Section 1404(a) does not, under certain circumstances, prevent transfer of the others. So long as no duplicative litigation results, it is appropriate for a court to sever the claims against those defendants not amenable to transfer, and then transfer the others. *See Chrysler Cred. Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518–19 (10th Cir.1991) (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968)); *see also* 17 *Moore's* § 111.12[2][a] and 15 Charles Alan Wright *et al., Federal Practice and Procedure* § 3845 at 351–53 (2d ed.1986). Because there will be minimal overlap between the separate Cable–La–Williams and Whiting–Cable–La actions, the court will exercise its discretionary authority under Rule 21 of the Federal Rules of Civil Procedure to sever Cable–La's third-party complaint against Whiting from Cable–La's complaint against Williams. Fed.R.Civ.P. 21; *see Chrysler Cred.*, 928 F.2d at 1519 (citing *Wyndham Assocs.*, 398 F.2d at 618 (holding misjoinder of parties need not be

present to invoke Rule 21)). The question then becomes what should be done with the severed third-party complaint.

Cable–La's third-party complaint against Whiting and GAI and Whiting's counterclaim against Cable–La and Nobel in the instant case are in large part duplicative of Whiting's suit against Cable–La in the Western District of North Carolina. Whiting's choice of forum is entitled to deference, as there is no forum-selection clause contained in its subcontract with Cable–La. *See Jumara*, 55 F.3d at 880. Because Whiting is a resident of the Western District, Cable–La's third-party complaint might have been brought in the Western District.[6] Moreover, since Whiting's and Cable–La's performance occurred in both the Western and Middle Districts, none of the traditional convenience factors to be considered under *Stewart* favor suit in the Middle District more strongly than they do suit in the Western District. In the face of a prior duplicative action in the Western District and in the absence of any strong reasons to retain the third-party complaint in the Middle District, the court finds it to be in the interests of justice to transfer the third-party complaint to the Western District under Section 1404(a). *See Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) (holding purpose of Section 1404(a) served by transferring action to district where prior duplicative action pending). It can then be consolidated with the pending Whiting–Cable–La suit. Fed.R.Civ.P. 42(a); *see* 8 *Moore's* § 42.11.

The proper order under these circumstances is to sever, then transfer. *See Chrysler*, 928 F.2d at 1519. Thus the court will first sever Cable–La's third-party complaint against Whiting from Cable–La's complaint against Williams, then transfer the former to the Western District of North Carolina and the latter to the Northern District of Oklahoma.

## C. *Cable–La's Motion to Strike*

Cable–La argues that the court should strike certain portions of Whiting's answer for failure to comply with the requirement that all motions be accompanied by a supporting brief, as set out in Local Rule 7.23(a). The court finds Cable–La's motion to be without merit, as Whiting's brief in opposition to Williams' motion to transfer represents a sufficient supporting brief for purposes of the Local Rules.

## CONCLUSION

For the foregoing reasons, the court will grant Whiting's motion to sever Cable–La's third-party complaint against Whiting and GAI from the Cable–La–Williams matter. This results in two separate actions. The court will grant Williams' motion to transfer the Cable–La–Williams matter (including Williams' counterclaim against Cable–La and Nobel) to the Northern District of Oklahoma. The court also will grant Whiting's motion to transfer the Cable–La–Whiting matter (including Whiting's counterclaim against Cable–La and Nobel) to the Western District of North Carolina. The court will deny Cable–La's motion to strike.

---

6. Transfer with respect to GAI is appropriate because Cable–La could have asserted a counterclaim against GAI in the prior pending Western District matter (which in fact it did). *See* 17 *Moore's* § 111.12[1][b].