**OUTEK CARIBBEAN DISTRIBUTORS, INC. Plaintiff,**

v.

**ECHO, INC., Defendant.**

**No. CIV.01–1684(HL).**

United States District Court, D. Puerto Rico.

May 30, 2002.

Francisco Radinson–Perez, Eric Perez–Ochoa, O'Neill Fernandez Gilmore & Perez Ochoa, P.S.C., San Juan, for Outek Caribbean Distributors, Inc., plaintiffs.

Richard Schell–Asad, Francisco M. Troncoso–Cortes, Troncoso & Becker, San Juan, Steven L. Katz, Laurence P. Becker, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, IL, for Echo Incorporated, defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a motion by Defendant Echo, Inc., for change of venue pur-

suant to 28 U.S.C. § 1404(a). Echo is an Illinois corporation with a product line that includes chainsaws, pruners, hedge clippers, and other yard maintenance power tools. Plaintiff Outek Caribbean Distributors, Inc., is a Puerto Rico corporation. Outek alleges that in July 1998 it entered into an agreement with Echo by which Outek would sell Echo's products in Puerto Rico. Outek further alleges that it promoted Echo's products in Puerto Rico and developed a market for them here. Outek claims that Echo subsequently threatened to terminate the parties' contract, refused to timely ship its products to Outek, and began to use other distributors in Puerto Rico to sell its products. Outek then brought this claim against Echo under Puerto Rico's Law 75[1] seeking monetary and injunctive relief.[2]

The present dispute revolves around the following clause in the parties' July 1998 agreement:

*Jurisdiction and Governing Law.* THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF ILLINOIS, AND SHALL BE CONSTRUED ACCORDING TO THE LAWS OF THAT STATE. Distributor consents to the jurisdiction of any court of general jurisdiction located within the Counties of Cook or Lake and the State of Illinois with respect to any legal proceedings arising out of this Agreement, and agrees that the mailing to its last known address by registered mail of any process shall constitute lawful and valid service of process in any such proceeding, suit or controversy. Distributor shall bring any legal proceeding arising out of this Agreement only in the federal or state courts located in the Counties of Cook or Lake and the State of Illinois. In the event Distributor institutes any legal proceedings in any other court other than those specified above, it shall assume all of the Company's costs in connection therewith, including, but not limited to, reasonable attorney's fees.

Docket no. 9, exhibit I, at 12. Echo argues that, based upon this clause, this case must be transferred to the United States District Court for the Northern District of Illinois. Outek has opposed this request. For the reasons set forth below, the Court grants Echo's motion.

## DISCUSSION

On its surface, the question of a forum-selection clause's enforceability appears to be a straightforward one. If a contract provides that disputes must be resolved in a given forum, then it would seem a facile enough matter to give effect to the clause. The resolution of this apparently simple question, however, is fraught with complications and often requires a court to consider federalism questions, choice of law issues, and the haunting specter of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The case law on this topic provides little succor: at times it seems that each circuit has crafted its own unique set of rules for enforcing these provisions. To make matters worse, the two leading Supreme Court cases on this area use different standards in determining what weight to give these clauses. *Compare Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29–31, 108 S.Ct. 2239, 2244–45, 101 L.Ed.2d 22 (1988) *with M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1,

---

1. 10 P.R. Laws Ann. §§ 278—278d (1997).

2. Outek originally brought this claim in Puerto Rico Superior Court. Echo then removed the case to this Court based on diversity of the parties. *See* 28 U.S.C.A. § 1332 (West 1993 & Supp.2001) & § 1441 (West 1994).

10–13, 92 S.Ct. 1907, 1913–15, 32 L.Ed.2d 513 (1972).

Given this convoluted scenario, it is not surprising that parties will often be confused as to what standard to apply. Such is the case here. In its brief, Echo relies on one line of cases applying the standard set forth in *Stewart*, as well as another line of cases applying *Bremen*. Echo's motion, however, is one for a change of venue pursuant to 28 U.S.C. § 1404(a). The type of motion that a party uses to enforce a forum-selection clause is significant. If the motion is one to dismiss, the criteria in *Bremen* should be applied; if the motion is one to transfer under section 1404(a), then *Stewart* will control. *Int'l Software Systems, Inc. v. Amplicon*, 77 F.3d 112, 114–15 (5th Cir.1996); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2nd Cir.1990); *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512–13 (9th Cir.1988); *Black & Veatch Constr. v. ABB Power Generation*, 123 F.Supp.2d 569, 579–81 (D.Kan.2000); *Knudsen v. Elite Trading Group, Inc.*, 2000 WL 488481, at *4 (D.Or. Mar.17, 2000); *Aviles v. Cantieri De Baia–Mericraft S.P.A.*, 943 F.Supp. 154, 155 n. 1 (D.P.R.1996); *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F.Supp. 271, 276 n. 10 (D.P.R.1996). Therefore, in the present case the Court will apply the standard set forth in *Stewart*.

■ The question of whether to enforce a forum-selection clause and transfer a case is one of federal law. *Stewart*, 487 U.S. at 32, 108 S.Ct. at 2245. The decision to transfer should be made on a case-by-case basis. In its analysis, a court must balance the convenience of the parties, the convenience of the witnesses, and public interest factors which are generally subsumed under the category "the interest of justice." *Id.* at 29–31, 108 S.Ct. at 2244; *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir.2002);

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997).

■ While a plaintiff's choice of forum is ordinarily given deference by the courts, this deference is inappropriate when the parties have entered into a contract providing for a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd Cir.1995); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989); *Knudsen*, 2000 WL 488481, at *5; *Strategic Marketing & Communications v. Kmart*, 41 F.Supp.2d 268, 273 (S.D.N.Y.1998); *Micro–Assist, Inc. v. Cherry Communications, Inc.*, 961 F.Supp. 462, 465 (E.D.N.Y.1997). The existence of a forum-selection clause is "a significant factor that figures centrally in the district court's calculus." *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244; *Royal Bed and Spring Co. v. Famossul Industria*, 906 F.2d 45, 51 (1st Cir.1990). Such a clause should be given considerable weight in the balance of factors. *Jumara*, 55 F.3d at 882; *In re Ricoh*, 870 F.2d at 573; *Black & Veatch*, 123 F.Supp.2d at 581 (Deeming as the "most important factor" the forum-selection clause); *REO Sales, Inc. v. Prudential Ins. Co.*, 925 F.Supp. 1491, 1492–93 (D.Colo.1996); *see also Stewart*, 487 U.S. at 33, 108 S.Ct. at 2246 (A valid forum-selection clause should be "given controlling weight in all but the most exceptional cases.") (Kennedy, J., concurring).

■ At least two circuits and a majority of district courts that have considered the issue have held that a valid forum-selection clause will shift the burden to the non-movant to demonstrate why the clause should not be enforced. *See Jumara*, 55 F.3d at 880; *Ricoh*, 870 F.2d at 573; *Miró González v. Avatar Realty, Inc.*, 177 F.Supp.2d 101, 104 (D.P.R.2001); *Cable–La, Inc. v. Williams Communications, Inc.*, 104 F.Supp.2d 569, 574 (M.D.N.C. 1999); *BRM Industries v. Mazak Corp.*,

42 F.Supp.2d 176, 180 (D.Conn.1999); *Strategic Marketing,* 41 F.Supp.2d at 273; *Micro–Assist,* 961 F.Supp. at 465; *REO Sales,* 925 F.Supp. at 1492–93; *Terra Int'l, Inc. v. Mississippi Chemical Corp.,* 922 F.Supp. 1334, 1370 (N.D.Iowa 1996), *aff'd without resolving this issue by* 119 F.3d 688 (8th Cir.1997); *Huntingdon Eng'g v. Platinum Software Corp.,* 882 F.Supp. 54, 57 (W.D.N.Y.1995); *P and J G Enterprises v. Best Western Int'l,* 845 F.Supp. 84, 88 (N.D.N.Y.1994); *but see Brock v. Baskin–Robbins USA Co.,* 113 F.Supp.2d 1078, 1085 (E.D.Tex.2000) (burden is on the party moving to enforce the forum-selection clause); *Choice Equipment Sales v. Captain Lee Towing,* 43 F.Supp.2d 749, 754 (S.D.Tex.1999) (same); *Hoffman v. Minuteman Press Int'l, Inc.,* 747 F.Supp. 552, 554 (W.D.Mo.1990).[3] The First Circuit has held, in the context of a motion to dismiss on *forum non conveniens* grounds, that the burden is on the non-movant to show why a forum-selection clause should not be enforced. *See Royal Bed,* 906 F.2d at 49, 52–53. And in the context of a motion to dismiss based on the clause, the First Circuit has stated that the clause is prima facie valid and must be enforced unless the opposing party can show the clause to be unreasonable. *See Silva v. Encyclopedia Britannica Inc.,* 239 F.3d 385, 386 (1st Cir.2001) (quoting *Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913). Therefore, based upon the jurisprudence both in the First Circuit and in other courts, the Court holds that

Outek has the burden to demonstrate why the forum-selection clause should not be enforced.

### 1. Bargaining power

Outek argues that the clause is not valid because there was unequal bargaining power between the two sides and Echo engaged in overreaching in the contract. In support of this argument, Outek asserts that Echo is a "multi-million dollar manufacturing company with far-flung operations;" that Outek is a small family-owned company with limited resources; that the parties' agreement was a form contract; and that Echo refused to negotiate any of the clauses, including the forum-selection clause.[4] These arguments misconstrue the law on when unequal bargaining power can invalidate a contract.

 Mere inequality of bargaining power between two sides will not be enough to render a contract unenforceable. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991); *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–95, 111 S.Ct. 1522, 1527–28, 113 L.Ed.2d 622 (1991) (Finding a forum-selection clause to be enforceable despite an obvious lack of bargaining parity). Moreover, the fact that a contract was in boiler-plate form will not, by itself, render it unfair or invalid. *Silva,* 239 F.3d at 389; *Lambert v. Kysar,* 983 F.2d 1110, 1119–20 (1st Cir.1993); *Northwestern Nat'l Ins. Co.*

---

**3.** The Court finds to be less than persuasive the holding in *Brock* and *Choice Equipment* that the burden is on the movant. Those two cases relied on two Fifth Circuit cases, *Peteet v. Dow Chemical Co.,* 868 F.2d 1428 (5th Cir.1989), and *Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir.1966), that did *not* involve forum-selection clauses. These circuit court cases merely stated that under run-of-the-mill motions to transfer under section 1404(a), the burden is on the movant. Neither *Brock* nor *Choice Equipment* addressed the holdings of

most other courts that a forum-selection clause can alter this burden.

Additionally, while the court in *Hoffman* did hold that the movant had the burden of proving that the balance of section 1404(a) interests favored transfer, it also held that the party opposing transfer had the burden of showing why the clause should not factor into the court's decision. 747 F.Supp. at 554.

**4.** Docket no. 19, at 7 & exhibit A.

*v. Donovan,* 916 F.2d 372, 377 (7th Cir. 1990); *Webb v. R. Rowland & Co.,* 800 F.2d 803, 807 (8th Cir.1986); *Microfibres, Inc. v. McDevitt–Askew,* 20 F.Supp.2d 316, 324 (D.R.I.1998). A contract will not be invalid merely because its terms were not subject to negotiation. *Shute,* 499 U.S. at 593, 111 S.Ct. at 1527; *Silva,* 239 F.3d at 389; *Lambert,* 983 F.2d at 1119–20. A contract may be unenforceable due to unequal bargaining power if the party challenging the contract has been the victim of fraud or overreaching; if the party was coerced into signing; if it was denied the opportunity to seek legal advice prior to entering into the agreement; or if the contract is somehow unconscionable. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1656; *Silva,* 239 F.3d at 389; *Donovan,* 916 F.2d at 377; *Knudsen,* 2000 WL 488481, at *6– 7; *Microfibres,* 20 F.Supp.2d at 324–25; *Stereo Gema,* 941 F.Supp. at 277.

█ In the present case, the parties' contract does not suffer from shortcomings that could render it invalid because of unequal bargaining power. Outek does not claim that it was defrauded or that it was denied the opportunity to seek legal advice prior to signing the agreement. Outek alleges only that Echo refused to negotiate any of the terms of the contract and that in order to maintain its relationship with Echo it agreed to the contract. This stance by Echo does not constitute coercion or otherwise render the contract unconscionable. *See Stereo Gema,* 941 F.Supp. at 276–77 (No coercion where dis- tributor told plaintiff that if it did not sign the contract, it would not be distributor's supplier). Under Outek's theory, any individual that had signed a form contract with a large corporation could subsequently invalidate any contract clauses that he considered to be unpleasant simply by claiming the existence of unequal bargaining power. In such a world, contracts would have little enforcement effect. This, however, is not the state of the law. Therefore, the Court declines to find the contract invalid because of unequal bargaining power.[5]

### 2. Balancing the factors

As mentioned above, in determining whether a forum-selection clause is enforceable, a court must consider the convenience of the parties and the convenience of the witnesses. *Stewart,* 487 U.S. at 29– 31, 108 S.Ct. at 2244. In the present case, Echo argues that Illinois is the more convenient forum because it has its offices and plants there; the decision to terminate the relation with Outek was made there; the individuals who made the decision are there; its evidence is there; and Echo shipped the products for Outek from Illinois. Outek counters that Puerto Rico is more convenient because it is located here; its witnesses and evidence are here; Echo terminated the agreement based on Outek's performance in Puerto Rico; and Outek's purchase of Echo products took place here. The points which the two sides elu-

---

**5.** Outek also seeks to support its bargaining power argument by pointing out that it is a small family-owned operation and that Echo is a multi-million dollar corporation. While Outek may not be as large as Echo, the complaint alleges that Outek did invest large amounts of money to develop a market for Echo's products in Puerto Rico; that it has maintained an inventory of these products; that it services them; that it is a supplier to the Puerto Rico Department of Education; that it has placed Echo's products at more than one hundred rental businesses in Puerto Rico; and that it has a sales staff which operates in Puerto Rico, Jamaica, and the Dominican Republic. These allegations indicate that Outek is hardly an unsophisticated Mom–and–Pop business and further undermine any claim of unequal bargaining power. *See Lambert,* 983 F.2d at 1121; *Stereo Gema,* 941 F.Supp. at 276–77.

cidate on the convenience factors are mirror images of one another. One party is based in Illinois and has its evidence and witnesses there; the other party is based in Puerto Rico and has its evidence and witnesses here. The arguments of each side essentially offset the arguments of the other side. Thus, the Court finds that a consideration of the convenience of the parties and the convenience of the witnesses favors neither forum. *Cf. Black & Veatch,* 123 F.Supp.2d at 581 (Location of the evidence did not favor either party where each side's evidence was located in a different forum, thereby requiring that someone's evidence would have to be transported from one forum to another).

Outek argues that if this case is transferred to Illinois it will not be able to afford to litigate there. It claims that it will be too costly for it to pay the travel expenses of willing witnesses and to compel the attendance of unwilling witnesses at a trial in Illinois. The Federal Rules provide, however, that deposition transcripts may be used at a trial where the witness is unavailable. *See* Fed.R.Civ.P. 32(a)(3); *cf. Bremen,* 407 U.S. at 18–19, 92 S.Ct. at 1918 (Potential cost of transporting witnesses to foreign forum was not significant because the parties could present the deposition testimony of the witnesses); *Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066, 1068 (8th Cir.1986) (same); *Miró González,* 177 F.Supp.2d at 105 n. 2 (same). Thus, Outek could use the deposition testimony of any

witnesses in Puerto Rico who could not be produced at a trial in Illinois. Therefore, the Court finds this point to be unconvincing.[6]

Outek also argues that Law 75 governs the question of the termination of the agreement and that therefore a Puerto Rico court is better suited than an Illinois one to hear the case. Although a court in Puerto Rico would surely be more familiar with Law 75, courts in one forum are oftentimes called upon to make rulings based upon the laws from another forum. Moreover, a transfer in the present case would not be the first time that a court outside of Puerto Rico has heard a Law 75 claim. *See, e.g., Caribbean Wholesales and Service Corp. v. U.S. JVC Corp.,* 101 F.Supp.2d 236 (S.D.N.Y.2000); *Harley–Davidson Motor Co. v. Motor Sport, Inc.,* 6 F.Supp.2d 996 (E.D.Wis.1998); *Hancor, Inc. v. Inter American Builders Agencies, Co.,* 1998 WL 239283 (N.D.Ohio March 19, 1998); *Whirlpool Corp. v. U.M.C.O. Int'l Corp.,* 748 F.Supp. 1557 (S.D.Fla.1990); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 685 F.Supp. 400 (S.D.N.Y.1988). Thus, the Court gives little weight to this argument.[7]

One aspect of the "interests of justice" factor is a consideration of judicial economy. *Terra Int'l,* 119 F.3d at 696. In the present case, the Court has set a trial date for this controversy. Enforcing the forum-selection clause and transferring the case to Illinois would almost certainly re-

---

**6.** Attorney's fees also should not be a concern. If Outek has a contingency arrangement with its counsel, it will not have to pay attorneys' fees unless it receives a judgment award in its favor. If, on the other hand, it is currently paying its attorneys on an hourly basis, it will have to incur that cost regardless of whether the case is tried in Illinois or in Puerto Rico.

**7.** Outek also opposes transfer on the grounds that its president is not familiar with Illinois

law. This argument is wholly unavailing. If, as Outek argues, Law 75 is controlling, its president's ignorance of Illinois law will be irrelevant. If, on the other hand, Illinois law is controlling, it is Outek's counsel—not its corporate officers—who will have to be familiar with that state's legal concepts. If Outek's current able counsel cannot research this area of the law, Outek should certainly be able to retain Illinois-based counsel.

sult in a delay in a final resolution. It is not certain, however, that such a delay would be a prolonged one. The discovery period in this case has passed, and the only pending motion is the present one. Thus, this case is ready to go to trial. A transfer would not necessarily require another round of discovery or other pre-trial litigation. An Illinois court could simply set a trial date at its earliest convenience. Thus, this factor weighs slightly against granting the motion to transfer.

■ Although Outek does not specifically mention the policy of Law 75, the statute does state that any contract provision which obligates a dealer to litigate a claim outside of Puerto Rico shall be considered as violating the public policy of the law and "is therefore null and void." 10 P.R. Laws Ann. § 278b–2. The First Circuit, however, has read *Stewart* to mean that it was unnecessary to consider state policy on forum-selection clauses. *See Royal Bed,* 906 F.2d at 51 (quoting *Stewart,* 487 U.S. at 30 n. 9, 108 S.Ct. at 2244 n. 9) (Section 1404(a) made it "unnecessary to address the contours of state law."); *see also Stewart,* 487 U.S. at 31 n. 10, 108 S.Ct. at 2244 n. 10 (Noting that a state law cannot pre-empt a district court's consideration of a forum-selection clause and require that the clause be automatically held void); *Kerobo,* 285 F.3d at 538 (a district court does not have the discretion to strike down forum-selection clauses merely because state public policy prohibits them.); *Maxon Eng'g Services v. United Sciences,* 34 F.Supp.2d 97, 100 (D.P.R.1998) (District court need not consider state's public policy on forum-selection clauses). Thus, local public policy on forum-selection clauses is certainly not a significant factor. To the extent that it is even a factor at all, it is merely one of the many factors to be considered in a determination to transfer under section 1404(a). *See Ins. Products*

*Mktg. v. Indianapolis Life,* 176 F.Supp.2d 544, 550 n. 19 (D.S.C.2001).

To sum up, in the present case the convenience of the witnesses and of the parties are factors which do not tip one way or the other in the balance. The Court is unconvinced by Outek's entreaty that it cannot afford to litigate in Illinois. Outek's point that an Illinois court will have to consider Puerto Rico law is entitled to a modicum of weight. Additionally, any possible delay in a final resolution of this case which a transfer could cause is deserving of some weight. As to Puerto Rico public policy on forum selection clauses, the Court need not consider this factor. On the other hand, there are significant factors which weigh in favor of enforcing the clause. First, as the party opposing the enforcement of the clause, Outek has the burden of demonstrating why it should not be enforced. *See Jumara,* 55 F.3d at 880; *Ricoh,* 870 F.2d at 573. Second, the existence of the clause is "a significant factor that figures centrally in the district court's calculus," *see Stewart,* 487 U.S. at 29, 108 S.Ct. at 2244, and the clause should be given considerable weight in the overall balance, *see Jumara,* 55 F.3d at 882; *In re Ricoh,* 870 F.2d at 573; *Black & Veatch,* 123 F.Supp.2d at 581; *REO Sales,* 925 F.Supp. at 1492–93; *see also Stewart,* 487 U.S. at 33, 108 S.Ct. at 2246 (Kennedy, J., concurring). Moreover, the First Circuit has recognized the general importance of enforcing these clauses. *See KKW Enterprises v. Gloria Jean's Gourmet Coffees,* 184 F.3d 42, 52 (1st Cir.1999) (Courts should enforce freely-negotiated forum selection clauses.); *Lambert,* 983 F.2d at 1117 (Recognizing that "the prevailing federal court view [is] that forum clauses foster policy interests important to the parties and the courts.").

■ The Court is therefore faced with a situation where one factor—the question

of judicial economy—provides some weight against transfer. Another factor—that an Illinois court will have to interpret Puerto Rico law—adds a little more weight to the balance. Neither of these two factors, however, is overwhelming. On the other side of the scale, the importance that courts, including the First Circuit, afford to forum-selection clauses easily offset these two factors. And because Outek had the burden, the Court finds that an overall balancing supports the enforcement of the forum-selection clause that the parties freely entered into.[8] Therefore, the Court holds that the forum-selection clause should be enforced.

WHEREFORE, the Court hereby **grants** Echo's motion to transfer (docket no. 9). The Clerk shall transfer this case to the United States District Court for the Northern District of Illinois.

**IT IS SO ORDERED.**

---

**8.** As noted above, the Court need not consider Puerto Rico's public policy on forum-selection clauses. *See Royal Bed,* 906 F.2d at 51; *see also Stewart,* 487 U.S. at 30–31 nn. 9–10, 108 S.Ct. at 2244 nn. 9–10; *Kerobo,* 285 F.3d at 538; *Maxon,* 34 F.Supp.2d at 100. Even if the Court were to consider Puerto Rico's public policy on this issue, the final result would be the same. Given the primacy that federal courts generally afford forum-selection clauses and given that Outek had the burden in this matter, Puerto Rico's public policy on this matter is insufficient to tip the balance against enforcement of the clause in the present case.