**M.K.C. EQUIPMENT COMPANY, INC., Plaintiff,**

v.

**M.A.I.L. CODE, INC., Defendant.**

**Civ. A. No. 93–2316–GTV.**

United States District Court, D. Kansas.

Jan. 13, 1994.

680

Thomas H. Bornholdt, Neill, Bornholdt & Terrill, Overland Park, KS, for M.K.C. Equipment Company, Inc., a Kansas corporation.

Barbara A. Harmon, William R. Sampson, Shook, Hardy & Bacon, Overland Park, KS, Susan K. Holtberg, John C. Duffey, Stuart & Branigin, Lafayette, IN, for M.A.I.L. Code, Inc., a Delaware corporation.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on defendant's motion to dismiss plaintiff's complaint on the grounds of improper venue (Doc. 10). For the reasons explained in this Memorandum and Order, the motion is denied.

This action was originally brought in the District Court of Johnson County, Kansas. Defendant removed the action to this court which has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The subject of the suit is a barcoding machine that plaintiff purchased from defendant and which, according to plaintiff, did not perform according to certain specifications with respect to its speed and accuracy in reading mail. Plaintiff claims damages based on breach of warranty and breach of contract.

Defendant's motion to dismiss for improper venue is apparently brought under Fed. R.Civ.P. 12(b)(3). The motion is based on a forum selection clause contained in a dealership agreement that defendant claims to be enforceable despite the fact that it was never signed by the parties. That clause requires that any claim or controversy arising out of the agreement must be resolved by an appropriate court within the State of Indiana.

## I. Summary of Relevant Facts

The following facts are derived from the affidavits and other documents that the parties have submitted to the court in connection with the motion. The affidavits cited are by Ronald R. Robbins, president of defendant M.A.I.L. Code, Inc. (M.A.I.L.) and John Grauberger, president of plaintiff M.K.C. Equipment Company, Inc. (M.K.C.).

1. On January 16, 1991, John Grauberger visited the offices of M.A.I.L. in Lafayette, Indiana, and expressed an interest in becoming a dealer for M.A.I.L.'s ZBC–10000 barcoding machine. Robbins 1st Aff. ¶ 2.

2. On January 17, 1991, M.A.I.L. sent a dealer packet/questionnaire to Grauberger. This packet included general information about dealers' territories and the requirements to be accepted as a dealer. It also contained a dealer discount schedule showing the dealer prices for the barcoding machine and a listing of payment options. The dealer questionnaire is a form intended to be completed by dealer applicants. It requests that the applicant be considered for a dealership and asks certain questions about the applicant's business. Robbins 1st Aff. ¶ 4 and Ex. A.

3. Grauberger completed the dealer questionnaire and returned it to M.A.I.L. It is not clear when this was done, but the form

titled "Credit References" is dated January 23, 1991. Robbins 1st Aff. ¶ 5 and Ex. B. This form was apparently completed by M.A.I.L. personnel to record the results of contacts with credit references that M.K.C. supplied on its questionnaire. This would imply that the completed dealer questionnaire was received by M.A.I.L. no later than January 23.

4. On or about March 19, 1991, M.K.C. purchased from M.A.I.L. a barcoding machine for the amount of $30,250.00. This machine was delivered to M.K.C. in April 1991. Grauberger Aff. ¶¶ 2 & 3; Robbins 1st Aff. ¶ 13. The price paid for the machine represented the dealer purchase price which was 40% off the list price. Robbins 1st Aff. ¶¶ 10–12. The discount was never returned to M.A.I.L. Robbins 2nd Aff. ¶ 10.

5. Grauberger was provided with and reviewed a copy of the Dealer Agreement which contains the forum selection clause prior to the purchase of the barcoding machine. Robbins 2nd Aff. ¶ 6. He reviewed the Dealer Agreement at M.A.I.L.'s Indiana offices prior to purchasing the barcoding machine and did not object to the forum selection clause contained in the agreement. Robbins 2nd Aff. ¶ 7. It is not clear whether this occurred during Grauberger's January 16 visit to Indiana or at some later time prior to his ordering the machine.

6. M.A.I.L. sent to M.K.C. a completed Dealer Agreement around June 3, 1991, but this agreement was never signed by either party. Grauberger Aff. ¶¶ 4 & 5; Robbins 1st Aff. ¶ 6.

7. At some time between April, 1991, when the machine was delivered, and June 3, 1991, when the Dealer Agreement was sent, M.K.C. determined that the machine was defective and representatives of M.A.I.L. acknowledged the defects. Grauberger Aff. ¶ 7.

8. Also at some time between April and June, 1991, M.K.C. decided that it would not enter into an agreement to act as a dealer or distributor of the machine. Grauberger Aff. ¶ 6.

9. M.K.C. did not consider itself bound by the terms of the Dealer Agreement and there were no discussions between the parties regarding the forum selection clause. Grauberger Aff. ¶¶ 8 & 9.

10. Nevertheless, before and after the delivery of the machine, Grauberger made statements that indicated he intended to act as a dealer. These included statements to the effect that he was showing the machine to people in order to promote it. Robbins 2nd Aff. ¶ 4. M.A.I.L. had delivered 24 brochures and order forms to M.K.C. for its marketing efforts to sell the machine. Robbins 1st Aff. ¶ 9.

11. M.K.C. applied for an "A" Dealership. Robbins 1st Aff. Ex. B. An "A" dealer has exclusive territory in which to market and sell the barcoding machine, while "B" dealers do not have protected territories. Robbins 1st Aff. ¶¶ 14–15. After M.K.C. applied for its dealership, M.A.I.L. rejected the application of another individual who had applied for a "B" dealership in the same area. Robbins 1st Aff. ¶ 16.

## II. Discussion

### A. Standard of Review

■ Plaintiff bears the burden of establishing this court's jurisdiction over the defendant. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). Likewise, upon a challenge to venue, the plaintiff has the burden of showing that venue is proper in the forum state. *Bartholomew v. Virginia Chiropractors Ass'n, Inc.,* 612 F.2d 812, 816 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980); *General Bedding Corp. v. Echevarria,* 714 F.Supp. 1142, 1144 (D.Kan.1989).

■ The procedure to deciding a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction. *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.,* 78 F.R.D. 445, 452 (D.Del.1978). When a motion to dismiss for lack of jurisdiction is brought before trial and supported by affidavits and other written material, plaintiff need only make a prima facie showing of jurisdiction. *Taylor,* 912 F.2d at 431; *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992). In assessing

whether plaintiff has met its burden, allegations in the complaint that are uncontroverted by defendant's affidavits must be taken as true and all factual disputes should be resolved in favor of plaintiff. *Taylor*, 912 F.2d at 431.

Generally, the plaintiff's choice of forum is given great deference. The burden on the party seeking to overcome the preference for the plaintiff's chosen forum is significant. "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972).

A valid forum selection clause may supersede the presumption in favor of the plaintiff's choice of forum. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). If the parties have previously agreed that litigation shall be conducted in a particular forum, there is a strong presumption favoring venue in that forum. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). A party is obligated to abide by its contractual duties, and litigate in the agreed-upon forum. Litigation may not be conducted outside of the designated forum without meeting a "heavy burden of proof" of unfairness or inconvenience. *The Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917. "[T]he venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *In re Ricoh Corp.*, 870 F.2d at 573.

### B. Choice of Law

A preliminary question to resolve is which state's law applies to this action. Although the application of a forum selection clause by a federal court sitting in diversity is determined under federal rather than state law, *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988), it is first necessary to decide whether the forum selection clause is

a part of the parties' agreement. In deciding whether an agreement exists and the terms of such agreement, the court must apply state law.

Normally, this court applies Kansas choice of law rules in diversity cases to ascertain which state's substantive law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Kansas law dictates that the law of the state where the last act necessary to form a contract took place governs conflicts over the interpretation of the contract. In this case, the laws of either Kansas or Indiana could apply, depending on one's interpretation of the relevant events.

However, as explained in the following section, the court finds that the Uniform Commercial Code (UCC) applies to the parties' agreement. Since both Kansas and Indiana have adopted the UCC and it has not been shown that there are any differences in those states' interpretation of any relevant provisions, a choice of law analysis is unnecessary. Accordingly, because there has been no showing of a conflict of laws, this court will look to interpretations of the UCC from both Kansas and Indiana and other jurisdictions.

### C. Applicability of the UCC

At the outset, the court concludes that the UCC governs this transaction. Plaintiff's argument that the forum selection clause contained in the dealer agreement should not apply is based on the provisions of UCC § 2-207[1] which governs situations in which the terms of a written confirmation can be incorporated into an existing oral agreement. Defendant has responded by arguing first that the parties' agreement is not governed by the UCC since the agreement predominantly deals with marketing and servicing activities rather than the sale of goods.

UCC Article 2 applies to transactions in goods. § 2-102. "Goods" are defined under the Code as "all things (including specially manufactured goods) which are movable at

---

1. For ease of reference, the court will refer to the UCC and cite its provisions in the short form. These sections are codified in the Indiana statutes at Ind.Code § 26-1-2-101, *et seq.*, and in the Kansas statutes at K.S.A. § 84-2-101, *et seq.*

the time of identification to the contract for sale." § 2–105. At the same time, a contract which calls only for the rendition of services is not subject to UCC Article 2. The written dealer agreement at issue in this case involves a mixed goods/services transaction. In order to determine how to classify such hybrid transactions, both Kansas and Indiana courts use the "predominant thrust" test. *See Care Display, Inc. v. Didde–Glaser, Inc.,* 225 Kan. 232, 589 P.2d 599 (1979); *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.,* 612 N.E.2d 550 (Ind.1993). Under this approach, "courts look to the agreement between the parties to determine their understanding about the predominant purpose of the contract. In focusing on the goals of the contracting parties, the predominant thrust approach preserves parties' expectations regarding their agreement." *Insul–Mark,* 612 N.E.2d at 554. In making this determination, one looks to the contract language in light of the surrounding circumstances, the objectives of the parties in entering the contract, and the relative costs involved for the goods versus the services. *Id.* at 555.

The dealer agreement in this case primarily concerns the sale and distribution of M.A.I.L.'s barcoding machine. It requires the dealer to purchase at least one machine each calendar quarter during the term of the agreement. It also requires the dealer to use its best efforts to promote, sell, and service the product and also requires dealers to attend sales and service training seminars.

Despite the agreement's reference to servicing the product, it is clear that the predominant goal of both the manufacturer and dealers entering into this agreement was to sell barcoding machines. Servicing was clearly an incidental aspect that does not change the overall objective of selling machines. The language of the agreement supports this interpretation. In paragraph 9, the relationship between the manufacturer and the dealer is described as "that of vendor and vendee." Most significantly, paragraph 6(c) states: "In the event of Dealer's default under this Agreement, M.A.I.L. code shall have all rights and remedies available to a seller of goods under the Indiana Uniform Commercial Code, and shall be entitled to reimbursement of its costs of enforcement hereof, including reasonable attorney's fees." Defendant, in drafting this agreement, has essentially acknowledged that its primary thrust is the sale of goods. Therefore, the UCC applies.

### D. Terms of the Agreement

Both parties agree that there was some type of agreement between them. Plaintiff, in bringing an action for breach of contract, acknowledges that its agreement with defendant at least entailed the purchase of one machine. Defendant argues that the plaintiff agreed to become an exclusive dealer and that the terms of the agreement were those detailed in the written dealer agreement. For purposes of deciding this motion, the court need not determine the exact terms of the contract, only whether the forum selection clause was a part of it.

Under UCC § 2–204, a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct of the parties. UCC § 1–201(3) defines an agreement as a bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing, course of performance, or usage of trade. The fact that the exact time of making the contract cannot be determined does not affect the binding character of the contract. UCC § 2–204(2).

Although UCC § 2–204 recognizes the existence of informal contracts, the UCC does not eliminate the requirement that the parties must have intended to enter into a binding agreement and that there be a meeting of the minds on material points. *Continental Grain Co. v. Followell,* 475 N.E.2d 318, 321 (Ind.Ct.App.1985). "[T]he intention of the parties is a factual matter to be determined by the trier from all of the circumstances, and a party relying on an express contract bears the burden of proving its existence." *Id.*

The facts in this case show that Grauberger, plaintiff's president, visited defendant's office on January 16, 1991. The next day defendant sent to Grauberger a

packet which included information about becoming a dealer and a dealer questionnaire. Grauberger returned the dealer questionnaire which appears to be the equivalent of an application to become a dealer. The form states, "Please consider me for an "A" Dealership," and contains information about the applicant company. Also included in the packet sent to Grauberger was information about the dealerships, including a "Territory Management Plan," a listing of dealer requirements, a dealer discount schedule, and payment options. At some point, plaintiff was apparently accepted as a dealer, and on about March 19, 1991, purchased the barcoding machine for the dealer discounted price.

Defendant does not allege that a copy of the Dealer Agreement containing the forum selection clause was ever sent to plaintiff at any time prior to June 3, 1991, after the plaintiff had identified problems with the machine's performance. However, defendant alleges that Grauberger was provided with and reviewed a copy of the standardized Dealer Agreement prior to purchasing the barcoding machine. Defendant states that this occurred at its offices, but it is not clear when. While the specific terms of the Dealer Agreement were not discussed, defendant argues that since plaintiff saw the Dealer Agreement and never objected to any of the terms, including the forum selection clause, those terms became a part of the parties' contract.

The court is not persuaded that the parties' agreement in this case included all the terms of the defendant's standard Dealer Agreement merely because that Agreement was shown to plaintiff's representative at some point and plaintiff never objected to the terms. While it is not necessary that the Dealer Agreement be signed in order to become binding on the parties, there still must be some evidence of a meeting of the minds on the terms of that Agreement. Plaintiff concedes that it intended to become a dealer, and there is evidence that the parties conducted themselves as dealer and manufacturer. These facts, however, are not sufficient to establish that the parties had agreed to every term contained in defendant's unsigned standardized Dealer Agreement. In addi-

tion, there is no evidence of a course of dealing or usage of trade that would implicate inclusion of this clause in the parties' agreement. *See* UCC § 1–205. Defendant simply has not carried its burden of proof to establish that the forum selection clause was a part of the parties' agreement.

Defendant also argues that the terms of the Dealer Agreement are enforceable under the provisions of UCC § 2–201 since defendant sent the Agreement to plaintiff on June 3, 1991, and plaintiff never objected. UCC § 2–201(2) provides that,

[b]etween merchants, if within a reasonable time a writing in confirmation of the contract and sufficiently against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements [of a writing signed by an agent] ... unless written notice of objection is given within ten (10) days after it is received.

This argument is flawed, however, because § 2–201(2) applies only to situations in which the statute of frauds is applicable. Plaintiff is not arguing that the parties' agreement is invalid because of noncompliance with the statute of frauds provisions of UCC § 2–201. As a result, defendant may not use § 2–201(2) to effect a change in or addition to the parties' existing oral contract. *See Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (N.Y.1978) (holding UCC § 2–201(2) inapplicable to determining whether arbitration clause in seller's form is binding when it was conceded there was a contract and dispute went only to the terms of the contract).

The proper analysis of the effect of sending plaintiff the Dealer Agreement is under UCC § 2–207. That section provides, in relevant part:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the

contract. Between merchants such terms become part of the contract unless:

. . . . .

(b) they materially alter it. . . .

UCC § 2–207(1) & (2)(b).

This section deals with a situation in which an offer is made and the acceptance comes by way of a standard form that contains additional or different terms. It also deals with the type of scenario in this case: an oral or informal agreement is made and one (or both) of the parties sends out a standard form as "confirmation" of that agreement. Here, the parties both contend that some type of agreement had been reached prior to June 3, 1991, when defendant sent the Dealer Agreement to plaintiff. When an agreement already exists, the subsequent form is nothing more than a confirmation, and the court's inquiry is not whether a contract exists, but rather what the terms of the contract are.

As explained earlier, there is not sufficient evidence to establish that the forum selection clause was a part of the original agreement; therefore it is an "additional" term. Since both parties are admittedly "merchants" within the meaning of the Code, *see* UCC § 2–104, it is apparent that § 2–207 could work in this case to make the forum selection clause a part of the parties' agreement. The only inquiry left is to determine whether a forum selection clause is "material."[2]

The court concludes that a forum selection clause contained in a confirmation, and not previously agreed to, constitutes a material alteration within the meaning of UCC § 2–207. This is consistent with the holdings of other courts on this issue. *See Dale R. Horning Co., Inc. v. Falconer Glass Industries, Inc.,* 710 F.Supp. 693, 698–99 (S.D.Ind. 1989); *Product Components, Inc. v. Regency Door and Hardware, Inc.,* 568 F.Supp. 651, 653–54 (S.D.Ind.1983); *General Instrument Corp. v. Tie Mfg., Inc.,* 517 F.Supp. 1231, 1235 (S.D.N.Y.1981). Accordingly, because the forum selection clause would materially

alter the contract, it is not a part of the parties' agreement.

### III. Conclusion

Plaintiff has made a prima facie showing that venue is proper in this court. Defendant has failed to carry its burden to establish that the forum selection clause contained in defendant's standard Dealer Agreement ever became a part of the agreement between plaintiff and defendant. As a result, defendant's motion to dismiss for improper venue must be denied.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to dismiss for improper venue (Doc. 10) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.

---

**2.** Based on this court's conclusion that the forum selection clause did not become a part of the contract, it is unnecessary to determine whether the "confirmation" was sent within a reasonable time, as required by § 2–207(1). The facts show that the Dealer Agreement was sent to plaintiff over two months after plaintiff had purchased the barcoding machine.