**BLACK & VEATCH CONSTRUCTION, INC., Plaintiff,**

v.

**ABB POWER GENERATION, INC., Defendant.**

**No. CIV. A. 00–2120–KHV.**

United States District Court, D. Kansas.

Sept. 25, 2000.

J. Michael Grier, Christopher Snow, Darren M. Dick, Blackwell Sanders Peper Martin LLP, Overland Park, KS, for plaintiff.

James S. Kreamer, Kara Trouslot Stubbs, Anne W. Schiavone, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for defendant.

## MEMORANDUM & ORDER

VRATIL, District Judge.

Black & Veatch Construction, Inc. (Black & Veatch) brings this diversity suit against ABB Power Generation, Inc. (ABB) for breach of contract. This matter comes before the Court on Defendant ABB Power Generation Inc.'s Motion To Dismiss Or In The Alternative Motion To Transfer Venue (Doc. # 11) filed June 5, 2000. ABB first asks the Court to dismiss the Black & Veatch claims because the parties contractually selected Massachusetts as the forum for this litigation. Alternatively, ABB asks the Court to dismiss this action for lack of personal jurisdiction and improper venue under Fed.R.Civ.P. 12(b)(2) and (3). Finally, if jurisdiction and venue are proper in the District of Kansas, for the convenience of the parties and witnesses, ABB asks the Court to transfer the case to the District of Massa-

chusetts under 28 U.S.C. § 1404(a). For the reasons set forth below the Court finds that personal jurisdiction is proper in the District of Kansas, and that the parties agreed to litigate this matter in Massachusetts. The Court therefore transfers the case to the United States District Court for the District of Massachusetts.

### Legal Standards

■■■ The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R.Civ.P., based on the affidavits and other written material. See *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. See *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995); *Behagen*, 744 F.2d at 733. Of course plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary presentation by the moving party. See *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). Plaintiff does have "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir.1989). Conclusory allegations that defendant has minimum contacts are insufficient to establish personal jurisdiction. See *id*. All factual disputes, however, are resolved in plaintiff's favor. See *id*. The procedure to decide a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction. See *Electronic Realty Assocs. v. Paramount Pictures Corp.*, 935 F.Supp. 1172, 1175 (D.Kan.1996) (citing *M.K.C. Equip. Co., Inc. v. M.A.I.L.*

*Code, Inc.*, 843 F.Supp. 679, 682 (D.Kan. 1994)).

■■ Under 28 U.S.C. § 1404(a), the Court may transfer a case to any district or division where it might have been brought for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The decision whether to grant a motion to transfer is within the sound discretion of the district court. See *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992). The moving party has the burden of demonstrating that a suit should be transferred. *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F.Supp. 667, 668 (D.Kan.1993). The Court must give great weight to plaintiff's choice of forum. *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F.Supp.2d 1212, 1214 (D.Kan. 1998). "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965 (further citations omitted).

### Facts

Black & Veatch is a Missouri corporation with its principal place of business in Overland Park, Kansas. ABB is a Delaware corporation with its principal place of business in Virginia. ABB is registered with the Kansas Secretary of State as a foreign corporation authorized to do business in Kansas pursuant to Kan. Stat. Ann. § 17–7301. No employees, officers or directors of ABB are located in Kansas, and ABB does not own any property or bank accounts in Kansas.

On July 28, 1997, Black & Veatch and ABB entered into a Consortium Agreement to define their responsibilities and control their relationship with regard to a proposal and contract to design, supply, install and erect a turbine power plant for Berkshire Power Company, LLC. (Berkshire) in Agawam, Massachusetts. ABB agreed to design and procure equipment, some piping and the electrical system, and to configure and commission the systems for the Agawam plant. Black &

Veatch agreed to provide engineering, procurement and management services and to install certain plant components. The consortium executed a so-called "EPC Contract" with Berkshire, a Massachusetts entity. The EPC Contract contains the following provision:

32.8 Choice of Law

The rights and remedies of the parties hereunder shall be governed by the laws of the Commonwealth of Massachusetts excluding its choice of law provisions and *all actions under this contract shall be brought in the Federal District Court in Massachusetts.*

Memorandum In Support Of Defendant ABB Power Generation, Inc.'s Motion To Dismiss Or In The Alternative To Transfer Venue (Doc. # 12) filed June 5, 2000, Ex. B–2 at 94 (emphasis added).

The Consortium Agreement contains the following provisions that refer to the EPC Contract:

Section 1.2 "Agreement" shall mean this document and all of its appendices. Section 1.3 "Consortium" shall mean the temporary association of the Members for the sole purpose set forth in Section 2.1 to allow each Member of the Agreement to accept that portion of the [EPC] Contract that it has sole and exclusive responsibility for and the joint performance limited to other obligations the [EPC][C]ontract may require. Except to the extent of the responsibilities and liabilities assumed by ABB and Black & Veatch as a result of signing the [EPC] Contract, under no circumstances does the execution of this Agreement by any Member intend to constitute an acceptance by that individual Member of responsibility for the entire Project or any responsibility with regard to furnishing any portion of the [EPC] Contract not covered under that individual Member's Scope of Work. * * *

1.8 "Contract" shall mean the EPC Contract with related documents executed by and between the Consortium and the Client defining the rights and obli-

gations of the parties thereto in the supply, erection, construction and completion of the Project, as it may be amended from time to time. The [EPC] Contract is set forth and made part hereof in Appendix 5. * * *

1.19 "Scope of Work" shall mean, for each Member, the work, supplies, service, responsibilities and requirements to be undertaken or provided by such Member as set forth in the Division Of Work document included as Appendix 1 (both Members) as well as all other work, supplies, services, responsibilities, and requirements, included in the [EPC] Contract, which can be reasonably referred to such Scope of Work, as defined though Division of Work (DOW) document as an Appendix 1 to this Agreement. * * *

Id. at 1–2; 20. Article 9.8 of the Consortium Agreement provides that it is governed by the law of the Commonwealth of Massachusetts. Id., Ex. B–1 at 19.

Although work on the overall project will be completed in 2001, Berkshire has issued a Certificate of Substantial Completion to Black & Veatch. Many of the documents which relate to the project are located at the job site in Massachusetts or in Richmond, Virginia. Approximately 175 boxes of documents related to the project are stored in Black & Veatch facilities in Overland Park, Kansas. Most of the Black & Veatch employees who have knowledge of the claims in this case, and who may be called to testify, live and work in the Kansas City metropolitan area. Of the 29 key employees who worked on the project, 27 reside in the Kansas City area. No ABB employees who worked in the project reside in Kansas. Employees of subcontractors and suppliers who may be required to testify are from Canada and 24 states.

## Analysis

I. Personal Jurisdiction

ABB asserts that under the Kansas long-arm statute and the Due Pro-

cess Clause of the Fifth Amendment, this Court lacks personal jurisdiction over it. "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," *OMI Holdings, Inc., v. Royal Insurance Company of Canada*, 149 F.3d 1086, 1090 (10th Cir.1998), the Court proceeds directly to the constitutional issue. See *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000) (because Oklahoma's long-arm statute permits exercise of any jurisdiction that is consistent with the U.S. constitution, personal jurisdiction inquiry collapses into single due process analysis). Due process requires "minimum contacts" between the nonresident defendant and the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This standard may be satisfied in one of two ways. First, specific jurisdiction exists over a matter in the forum state if defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir.1996) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Second, general jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler*, 90 F.3d at 1533 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. See *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Black & Veatch asserts that the Court can maintain specific jurisdiction over ABB. The Court thus proceeds to determine whether exercising specific personal jurisdiction over ABB would offend due process.

The first step in the minimum contact analysis requires the Court to determine whether ABB purposefully availed itself of the privilege of conducting business in Kansas. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Purposeful availment requires actions by ABB which "create a substantial connection with the forum state." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Black & Veatch points to several facts in support of the argument that ABB purposefully availed itself of the privilege of conducting business in Kansas. First, ABB purposefully negotiated and entered an agreement with Black & Veatch, which has its principal place of business in Overland Park, Kansas. Establishing a contractual relationship with a resident of Kansas does not by itself, however, establish minimum contacts with Kansas; the Court must evaluate the parties' actual course of dealing in determining whether a nonresident "purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174. Here the parties entered the Consortium Agreement in order to obtain a contract to engineer, supply and construct a turbine plant in Massachusetts. ABB asserts that the Consortium Agreement was to be entirely performed in Massachusetts. Black & Veatch argues, however, that ABB knew when it entered the Consortium Agreement that Black & Veatch would perform much of the design work at its principal place of business in Kansas. Black & Veatch also points out that it indeed carried out these duties in Kansas. See *Oxford Transp. Servs. v. MAB Refrigerated Transp., Inc.*, 792

F.Supp. 710 (D.Kan.1992) (finding jurisdiction in Kansas where defendant company entered contract with full knowledge that plaintiff was Kansas corporation and that contract would be partly performed in Kansas). ABB responds that in determining whether it availed itself of the privilege of conducting business in Kansas, the fact that *Black & Veatch* performed contractual duties in Kansas is not strong evidence of *ABB's* contacts with Kansas. In this case, however, ABB also sent engineering and management personnel to a design review meeting in Overland Park, Kansas in April of 1998, to discuss aspects of the Consortium Agreement performance. See *Taylor v. Phelan*, 912 F.2d 429, 432–33 (10th Cir. 1990) (nonresident detective subject to specific jurisdiction where plaintiffs' negligence claims arose out of detective's visit with plaintiffs in Kansas). Black & Veatch further points out that an appendix to a consortium project manual listed the names of its Kansas-based employees, with Kansas telephone and fax numbers, and provided that ABB would send notices regarding the Consortium Agreement to the Black & Veatch address in Overland Park, Kansas.

ABB asserts these contacts are insufficient to constitute purposeful availment. It points out that the one meeting in Kansas occurred after the Consortium Agreement was formed and that "countless" other meetings were held in Massachusetts. ABB cites *Finance & Mktg. Ass'n Inc. v. He–Ro Group, Inc.*, 975 F.Supp. 1429 (D.Kan.1997), for the proposition that an isolated instance is not sufficient to find that a defendant transacted business in Kansas. *He–Ro* involved an exclusive agency contract to sell clothing made by a New York firm in Lebanon; the "isolated instance" was that some shipments of clothing were sent to Kansas. *He–Ro* is distinguishable because in that case, defendant's agent never appeared personally in Kansas and the contract at issue did not contemplate performance in Kansas. On whole, the Court finds that in this case,

Black & Veatch has made a prima facie showing of "purposeful availment."

 Next, the Court considers whether a nexus exists between defendant's forum-related contacts and plaintiff's cause of action. *OMI*, 149 F.3d at 1094 (citing *Asahi*, 480 U.S. at 109, 107 S.Ct. 1026). Here, ABB's contacts arose when it entered into the Consortium Agreement and continued in the course of performing the agreement. Black & Veatch claims that ABB breached the Consortium Agreement; thus its claim arose from ABB's forum-related activity. The Court has no difficulty finding the required nexus.

 Finally, to determine whether the exercise of personal jurisdiction is fair and reasonable, courts consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026).

The first factor, the burden on defendant, slightly favors ABB. ABB will incur some burden by litigating this case in Kansas, which is a substantial distance from Massachusetts, the allegedly proper forum. The Court notes, however, that ABB is a Delaware corporation with its principal place of business in Virginia, and not a resident of Massachusetts. Thus ABB will also incur some burden if this case is litigated in Massachusetts.

The second factor is the interest of the State of Kansas in resolving the instant action. States have an important interest in providing a forum in which their residents can seek redress for injuries. *Burger King*, 471 U.S. at 483, 105 S.Ct. 2174. Kansas is the principal place of business of

Black & Veatch, which asserts injuries based on breach of contract. ABB is authorized to do business in Kansas. The Court finds that Kansas has a substantial interest in the present dispute.

The third factor in the reasonableness inquiry is whether plaintiff may receive convenient and effective relief in another forum. See *OMI Holdings*, 149 F.3d at 1097. This factor favors a plaintiff where its chances of recovery will be greatly diminished if it is forced to litigate in another forum because of that forum's laws or because the burden is so overwhelming as to practically foreclose pursuit of the lawsuit. See *id.* Massachusetts law controls this dispute; but Kansas contract law and Massachusetts contract law do not appear to differ significantly. Black & Veatch notes that its principal place of business is Kansas, where it maintains the files and documents which relate to this lawsuit. Further, most Black & Veatch witnesses, including 27 of the 29 key employees who worked on this project, are based in the Kansas office. As ABB points out, however, the alleged breach occurred in Massachusetts and much of the evidence will be located in Massachusetts or Virginia. Further, the site where the injury occurred and where evidence is located usually will be the most efficient forum. Black & Veatch has not shown that the Massachusetts federal courts are unable to grant it full and complete relief. Therefore the Court finds that this factor favors ABB. Black & Veatch has not shown that it cannot obtain convenient and effective relief in another forum.

■ Next, the Court examines whether Kansas would best further the interstate judicial system's interest in obtaining the efficient resolution of controversies. To evaluate this factor, courts generally consider the location of witnesses, where the underlying wrong occurred, what substantive law governs the case and whether jurisdiction is necessary to prevent piecemeal litigation. See *id.* The first consideration does not appear to favor either

party—some witnesses are located in Kansas, some in Massachusetts and some in numerous other states. The next two considerations favor ABB because the alleged wrong occurred in Massachusetts and the parties agree that Massachusetts law applies. The final consideration—avoiding piecemeal litigation—does not strongly favor either party, although it may tip the scales toward ABB because further lawsuits might be filed in Massachusetts. Overall, the Court finds that the interest of the interstate system is best served by suit in Massachusetts.

The fifth factor in the reasonableness determination is the shared interest of the states in furthering fundamental substantive social policies. The Court discerns no facts which favor either party on this issue.

Overall, the reasonableness inquiry is close in this case. After reviewing all of the relevant factors, however, the Court concludes that exercising personal jurisdiction over ABB will not violate traditional notions of fairness and due process. Black & Veatch alleges that ABB entered into the Consortium Agreement with full knowledge that Black & Veatch has its principle place of business in Kansas, and that it would perform a substantial amount of the contract in Kansas. ABB sent representatives to a meeting in Kansas and agreed to communicate via notices sent to the Black & Veatch office in Kansas. See *Oxford Transp. Servs. v. MAB Refrigerated Transp.*, 792 F.Supp. 710, 713 (D.Kan. 1992) (finding jurisdiction in Kansas where defendant entered contract with Kansas corporation, telephoned plaintiff's Kansas office on several occasions and accepted payment from Kansas office). On the current record the Court finds that it has personal jurisdiction over ABB.

## II. Venue

### A. 28 U.S.C. § 1391

ABB also argues that the Court must dismiss this action for lack of venue. Under 28 U.S.C. § 1391(a), [a] civil action

wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Defendant asserts that Section 1391(a)(1) does not establish grounds for venue in the District of Kansas because ABB is not a Kansas resident. Under 28 U.S.C. § 1391(c), however, for purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). Because this Court has determined that ABB is subject to personal jurisdiction in Kansas, venue is proper under Section 1391.

B. Forum Selection Clause

ABB further asserts that venue is improper in Kansas because the Consortium Agreement designated Massachusetts federal district court as the forum for any litigation. ABB asserts that the Consortium Agreement incorporates the entire EPC Contract, including the provision that all claims shall be brought in federal district court in Massachusetts. Black & Veatch asserts that the Consortium Agreement incorporates the EPC Contract only as to the scope and performance of work, as outlined in the EPC Contract.

▐ Even though application of a forum selection clause by a federal court sitting in a diversity case is determined under federal rather than state law, it is first necessary to decide whether a forum selection clause is part of the parties' agreement. In deciding whether an agree-

ment exists and the terms of such an agreement, a federal court must apply state law. *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.*, 843 F.Supp. 679 (D.Kan.1994). Further, a district court exercising diversity jurisdiction applies the choice of law rules of the state in which it is sitting. *Shearson Lehman Bros., Inc. v. M & L Invs.*, 10 F.3d 1510, 1514 (10th Cir.1993). Kansas choice of law rules honor an effective choice of law made by contracting parties. See *Equifax Servs. Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990). In this case the parties designated by contract that Massachusetts law applies. In addressing the forum selection issue, the parties cite Kansas rather than Massachusetts law. In fact, however, Kansas and Massachusetts contract interpretation law appear to be substantially similar.

▐ "In construing a contract, the intent of the parties is the primary question; meaning should be ascertained by examining the documents from all corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; and reasonable rather than unreasonable interpretations are favored." *Akandas, Inc. v. Klippel*, 250 Kan. 458, 827 P.2d 37 (1992). When a contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987). When interpreting a forum-selection clause, courts construe a provision or provisions of a written contract to determine what meaning was intended and conveyed by the language the parties used. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 455, 827 P.2d 24 (1992).

▐ ABB argues that the Consortium Agreement incorporates the entire EPC Contract, including the forum selection clause which, as noted above, provides as follows:

The rights and remedies of the parties [the consortium and owner] hereunder shall be governed by the laws of the Commonwealth of Massachusetts excluding its choice of law provisions and *all actions under this contract shall be brought in the Federal District Court in Massachusetts.*

Memorandum In Support Of Defendant ABB Power Generation, Inc.'s Motion To Dismiss Or In The Alternative To Transfer Venue (Doc. # 12) filed June 5, 2000, Ex. B–1 at 94 (emphasis added).

In *Kansas Gas & Electric Co. v. Kansas Power & Light Co.*, the Kansas Court of Appeals considered whether an Operating Agreement incorporated the arbitration clause of an Ownership Agreement. The court there stated that [b]y providing in paragraph 1(a) of the operating agreement that "[t]he respective obligations, duties and responsibilities" of the owners "undertaken in or arising out of this Operating Agreement shall in all respects be subject to and controlled by the definitions, terms, conditions and substantive and procedural provisions of the Ownership Agreement," the drafters of the operating agreement clearly intended to incorporate by reference the arbitration clause in the ownership agreement. KG & E has not suggested any reasonable alternative meaning for this provision.

Moreover, the operating agreement provides that "the term 'this Agreement' as used in the Ownership Agreement shall be deemed to include this Operating Agreement." The arbitration clause in the ownership agreement states that any controversy between or among the owners "arising out of or relating to this Agreement, or any breach hereof or default hereunder," shall be submitted to arbitration at the request of any owner. Therefore, the arbitration clause in the ownership agreement requires arbitration of any controversy arising out of or relating to the operating agreement. 12 Kan. App.2d 546, 551, 751 P.2d 146, 150 (1988).

ABB points to language in the Consortium Agreement that allegedly incorporates the entire EPC Contract. Article 1.2 of the Consortium Agreement provides that " 'Agreement' shall mean this document and all of its appendices," and Article 1.8 provides that "Contract" shall mean the *EPC Contract with related documents* executed by and between the Consortium and the Client *defining the rights and obligations* of the parties thereto in the *supply, erection, construction and completion of the Project,* as it may be amended from time to time. *The Contract is set forth and made part hereof in Appendix 5.*

Memorandum In Support Of Defendant ABB Power Generation, Inc.'s Motion To Dismiss Or In The Alternative To Transfer Venue (Doc. # 12) filed June 5, 2000, Ex. B–1 at 1–2.

The language cited by ABB is not as specific as the language which the Kansas Court of Appeals cited in KG & E. Article 1.8, however, clearly states that the EPC Contract is made a part of the Consortium Agreement.

Black and Veatch asserts that Article 1.3 of the Consortium Agreement indicates that the parties did not intend to incorporate every provision of the EPC Contract, and thus the Agreement is ambiguous at best. Article 1.3 provides:

"Consortium" shall mean the temporary association of the Members for the sole purpose set forth in Section 2.1 *to allow each Member of the Agreement to accept that portion of the [EPC] Contract that it has sole and exclusive responsibility for and the joint performance limited to other obligations the Contract may require.* Except to the extent of the responsibilities and liabilities assumed by ABB and BVCI as a result of signing the [EPC] Contract, under no circumstance does the execution of this Agreement by any Member intend to constitute an acceptance by that Individual Member of responsibility for the entire Project or any responsibility with regard to furnishing any portion of the [EPC]

Contract not covered under that individual Member's Scope of Work.

Id. at 1 (emphasis added). According to Black & Veatch, Article 1.3 indicates that the members intended to incorporate only that portion of the EPC Contract which set forth the parties' respective work obligations, as outlined in the Consortium Agreement's division of work document.[1] A more reasonable reading, however, is that Article 1.3 provides that Black & Veatch and ABB are each responsible for only their designated work, and are jointly responsible only as the EPC Contract requires.

Black & Veatch points out that the Consortium Agreement and the EPC Contract contain different arbitration provisions, and asserts that if the Consortium Agreement incorporates the EPC Contract, the parties would not have included a separate arbitration clause. It is just as likely, however, that the parties simply agreed to a different arbitration clause to control the Consortium Agreement. Black & Veatch also points out that the EPC Contract contains both a choice of law provision (Massachusetts) and a forum selection clause, while the Consortium Agreement contains a choice of law provision (Massachusetts) but no forum selection clause. If the Consortium Agreement incorporates the EPC Contract, however, the choice of law provision is merely a redundancy and the Agreement includes the forum selection clause by incorporation.

The Court finds that a fair reading of Articles 1.2 and 1.8 of the Consortium Agreement make the EPC Contract a part of the Consortium Agreement. Black & Veatch points to no internal inconsistency with respect to the forum selection clause. Thus, even if other parts of the Consortium Agreement are ambiguous, the forum selection clause is not: the parties agreed that the federal district court in Massachusetts is the forum to decide disputes concerning the contract.

It is unclear whether forum selection clauses are properly enforced by way of a motion to dismiss for improper venue. See *International Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996); *Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 912 (E.D.N.Y.1994) (effect to be given forum selection clauses and the procedural vehicle by which they should be enforced is subject of confusion). The Tenth Circuit has stated that "[a] motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under 12(b)(3)." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992).

If the Court treats the motion to dismiss as one for improper venue, some courts apply the standard set forth in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Under this standard,

---

1. Black & Veatch relies upon *United States Steel Corp. v. Turner Constr. Co*, 560 F.Supp. 871 (S.D.N.Y.1983), for its assertion that the Consortium Agreement does not incorporate the EPC Contract forum selection clause. In Turner, the subcontract incorporated by reference the conditions of a prime contract that contained a forum selection clause. The court found that "the incorporation by reference of the conditions of the prime contract does not, as a matter of construction, extend beyond the scope, quality, character and manner of performance of the subcontract work." *Id.* at 874. Black & Veatch asserts that likewise in this case the Consortium Agreement incorporates the EPC Contract only as to the performance of work under the EPC Contract and does not extend to disputes between consortium members. Turner is readily distinguishable, however, because there the parties to the subcontract were not also parties to the primary contract. See *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela*, 760 F.2d 390, 395 n. 5 (2d Cir.1985). Further, the subcontract language in Turner which incorporated the prime contract *by its terms* limited the incorporation to the scope, quality, character and manner of performance of the subcontract work. By contrast, the Consortium Agreement in this case simply incorporates the entire EPC Contract.

a forum selection clause should be enforced unless unreasonable in the circumstances. *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907; *Carnival Cruise Lines*, 499 U.S. at 588, 111 S.Ct. 1522. Such clauses "have the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines*, 499 U.S. at 594, 111 S.Ct. 1522. Under this approach, the forum selection clause must be enforced unless it is clearly unreasonable or unjust, or was obtained by fraud or overreaching. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990); *Double A Home Care v. Epsilon Systems, Inc.*, 15 F.Supp.2d 1114, 1117.

Black & Veatch has failed to demonstrate either that presenting the action in Massachusetts is clearly unreasonable or unjust, or that ABB obtained the forum selection clause by fraud and overreaching. Although Black & Veatch has presented evidence that it will be inconvenienced if the action is maintained in Massachusetts, that prospect was evident when it entered the Consortium Agreement. In this case, the parties negotiated the Agreement and presumably included the forum selection clause to conserve resources should litigation become necessary. Their designation of Massachusetts as proper venue should be given great deference. See id. (enforcing forum selection clause in contract between two businesses).

■ Because the venue selection clause is reasonable, the Court could dismiss this action. Alternatively, "in the interests of justice" pursuant to 28 U.S.C. § 1406(a), the Court may transfer it to the United States District Court for the District of Massachusetts, a district where the action might have been brought. See *Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 72 (S.D.N.Y.1978) (finding forum selection clause rendered venue in New York improper; transferring case under § 1406(a) but noting transfer also would be proper under § 1404(a)). The Court notes that the same result would follow under ABB's motion to transfer pursuant to 28 U.S.C. § 1404(a), which provides as follows:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

In *Chrysler Credit Corp. v. Country Chrysler, Inc.* 928 F.2d 1509, 1516 (10th Cir.1991), the Tenth Circuit noted that Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness:

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforce ability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Id. at 1516. The Supreme Court has also addressed the role of forum selection clauses in the Section 1404 analysis:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus

calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

*Stewart Organ. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); see also *Koch Carbon, Inc. v. Viben Int'l Corp.*, 1996 WL 331120 (D.Kan. 1996) (choice of venue provisions normally outweigh considerations of convenience found in § 1404(a)).

In this case, the Consortium Agreement specifically designated the federal district court in Massachusetts as the proper venue for any action. Despite the strong presumption in favor of venue in a forum designated in this manner, see *MKC Equip. Co., Inc. v. M.A.I.L Code, Inc.*, 843 F.Supp. 679, 683 (D.Kan.1994), Black & Veatch contends that venue should be in Kansas.

ABB contends that Kansas is an inconvenient forum for several reasons. First, the on-going project is in Massachusetts, a fact which Black & Veatch does not dispute. Second, ABB asserts that most of the relevant documents and witnesses are located in Massachusetts. In support of this proposition, ABB points to the affidavit of Walter Horlacher, manager of the Agawam Plant project, which states that the vast majority of all individuals with knowledge of the project live outside the State of Kansas. None of ABB's employees who worked on the project were from Kansas, and the owner's representatives and employees with whom he has contact are not from Kansas. Black & Veatch counters that most of its employees who worked on the project are in the Kansas City metropolitan area. Based on the current record, the Court can not determine the number of potential witnesses who reside in or out of Kansas. Thus, neither party has shown a disproportionate difficulty or inconvenience in securing the attendance of non-party witnesses.

ABB also presents affidavit evidence that because the project is ongoing, all of the "official project documents" are located on the job site in Massachusetts or at ABB offices in Richmond, Virginia. Black & Veatch points to evidence that it has moved project documents to its offices in Kansas. This factor does not favor either party, because the parties will have to transport at least some documents no matter where the case is litigated. ABB also points out that Massachusetts law governs the contract, and thus Massachusetts has a greater interest in the outcome of the case. This factor weighs in favor of a transfer, although the Court frequently applies the law of other forums.

The most important factor, however, is the contractual forum selection clause. The fact that Black & Veatch filed the suit in Kansas is of little consequence. The parties chose Massachusetts federal district court as the forum, and defendant has pointed to no "inconvenience so serious as to foreclose a remedy," *Riley*, 969 F.2d at 958, nor any evidence of bad faith, overreaching or lack of notice.

Weighing all of the relevant factors, the Court finds that the case should be transferred to the United States District Court for the District of Massachusetts.

**IT IS THEREFORE ORDERED** that Defendant ABB Power Generation Inc.'s Motion To Dismiss Or In The Alternative Motion To Transfer Venue (Doc. # 11) filed June 5, 2000, be and hereby is **SUS-**

TAINED in part, in that the case is transferred to the United States District Court for the District of Massachusetts.